# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | NO. 3:18-CR-00021 |
| LANCE GREEN, | (JUDGE CAPUTO) |
| Defendant. | |

## **MEMORANDUM**

Presently before me is a Motion to Suppress filed by Defendant Lance Green. (Doc. 36). Green claims that police unlawfully stopped the car he was a passenger in, and therefore moves to suppress evidence seized as a result of his subsequent arrest. Because police had reasonable suspicion to stop the car, Green's constitutional rights were not violated. The Motion to Suppress will therefore be denied.

## I. Background

The Indictment charges Green with one count of possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and one count of possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). (Doc. 1).

Green's instant Motion to Suppress (Doc. 36) states that "[o]n October 5, 2017, Green was a passenger in an automobile being operated by Nasheen Cury. The vehicle was unlawfully stopped by Kingston Police on Scott Street in Wilkes-Barre, Pennsylvania." (*Id.* ¶ 1). "At no time on October 5, 2017," Green continues, "did police have probable cause or reasonable suspicion to stop the vehicle in question." (*Id.* ¶ 2). These are the only facts Green sets forth in his Motion and brief in support. (*See id.*; Doc. 37 at 2).

The Government filed its Brief in Opposition (Doc. 40), which, citing to a police incident report, paints a more detailed picture of what happened on October 5, 2017. On that day, "officers responded to a physical altercation . . . involving neighbors" at a Kingston, Pennsylvania address. (*See id.* at 10 (Police Incident Report)). Witnesses to the incident "reported that their neighbor Nasheena Curry was yelling on the phone to someone 'to bring the strap' [i.e., a gun] because of this altercation." (*Id.*). Curry denied having yelled that.

(*Id.*). The responding officers then left. (*Id.*).

Shortly thereafter officers were again dispatched to the same address for "some type of disturbance between neighbors involving a 'taser' and a firearm." (*Id.*). The same three victims told the officers that after the first officers left, "a white vehicle" arrived at the address. (*Id.*). A victim (whose name has been redacted from the report) then "heard a knock at the door," and upon opening the door saw Curry, "another black female, and a heavyset black male wearing a red and black shirt." (*Id.*). Curry "pulled [this victim] out onto the porch[,]" punched her, and began pulling her hair out. (*Id.*). The victim's mother and brother "came onto the porch to assist" her, but the "black male displayed a handgun and threatened" one or more of them with a "small black firearm." (*Id.*). One witness specifically told officers that he saw "the heavyset black male display a small black firearm." (*Id.*). Officers observed that the victim had "numerous visible injuries to her face and pieces of her hair w[ere] falling out in large clumps." (*Id.*).

After knocking on Curry's door to no avail, officers noticed that the white car was still in the driveway. (*See id.*). They decided to surveil the residence "in order to take the suspects into custody" once they left. (*Id.*). Officers then observed Curry, another woman, and the heavyset man in a red and black shirt leave Curry's home and get inside the white car. (*See id.*). Officer Miller, a Kingston police officer, "followed the vehicle until a traffic stop could be conducted safely with assistance from other units d[ue] to the nature of the threats." (*Id.*). "The vehicle was stopped on Scott St in Wilkes Barre and the 3 occupants were detained." (*Id.*). The heavyset male was identified as the Defendant, Lance Green, and officers "detected the strong smell of marijuana inside [the car] and could see remnants of marijuana throughout the entire vehicle." (*Id.*).

According to the Government, a Wilkes-Barre City Police Department officer present on the scene "ran a check on [Green] and discovered [he] had an outstanding warrant for his arrest." (*Id.* at 3). A search warrant was subsequently executed at Green's residence and a gun with an obliterated serial number was found. (*Id.*).

Green did not file a reply to the Government's brief, nor has he disputed the

2

Government's version of the facts. Instead, Green maintains that officers had no lawful reason for stopping the car he was traveling in, and that Officer Miller's pulling the car over was unlawful because it occurred outside his jurisdiction. (Doc. 37 at 3).

The Motion has been fully briefed and is now ripe for review.[1]

## II. Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). The proponent of a motion to suppress bears the burden of establishing that his Fourth Amendment rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 130 n.2 (1978). The applicable burden of proof is by a preponderance of the evidence. *United States v. Mastronardo*, 987 F. Supp. 2d 565, 575 (E.D. Pa. 2013) (citing *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974)).

Green advances two arguments for suppressing the evidence ultimately seized as a result of police stopping the car he was in: first, that the stop "was done without a warrant and without probable cause or reasonable suspicion," (Doc. 37 at 3); and second, that the stop "occurred outside of the jurisdiction" of Officer Miller, the seizing officer, (*id.* n.1). Both arguments raise the same question: whether the stop was reasonable under the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *United States v. Sed*, 601 F.3d 224, 228 (3d Cir. 2010) (extraterritorial vehicular arrest not *per se* unlawful but rather subject to reasonableness analysis under *Robinette*). In the context of an investigative vehicle stop, I must determine whether the officers had "'a particularized and objective basis

---

[1] If the defendant alleges facts that, if true, "could violate a defendant's rights," I must hold an evidentiary hearing. *United States v. Brink*, 39 F.3d 419, 424 (3d Cir. 1994). However, because Green raises no "issue[] of fact material to the resolution of [his] constitutional claim[,]" *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996), there is no need for an evidentiary hearing.

3

for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *Id.* at 397 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

Here, officers had a particularized and objective basis for suspecting Green of criminal activity. Even though officers themselves "did not observe any vehicle code violations or unlawful activity attributable to Green or to the vehicle," as Green notes (Doc. 37 at 3-4), they had eyewitness statements linking Green and the others to a battery and assault that left a victim with facial injuries and hair falling out in clumps. Officers also saw the white car in Curry's driveway, watched Green get in the car with Curry and the other woman (all of whom matched the descriptions eyewitnesses gave), and followed it all the way through to the stop. On the basis of this information, officers had a reasonable suspicion that the white car's occupants were involved in criminal activity and were thus justified in stopping the car. *See United States v. Goodrich*, 450 F.3d 552, 561-64 (3d Cir. 2006) (officers reasonably suspected the defendant of criminal activity where an informant told officers there were two people carrying "buckets or something" in a high-crime area and the car the defendant was in was the only car in the area); *United States v. Robertson*, 305 F.3d 164, 168-69 (3d Cir. 2002) (information given to an officer by a witness was "sufficiently trustworthy" where the witness "report[ed] what he had observed moments ago," spoke face-to-face (allowing the officer to assess "credibility and demeanor"), and was near where the crime being investigated just occurred (quotations omitted)). The information officers had was enough for probable cause to arrest Green and the others, let alone reasonable suspicion to stop the car he was in. *See Wilson v. Russo*, 212 F.3d 781, 789-92 (3d Cir. 2000) (reliable eyewitness identifications, even if slightly inconsistent, are sufficient for probable cause); *see also Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (an "identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause").

And the stop was still reasonable despite the fact that Officer Miller, a Kingston officer, initiated the stop in neighboring Wilkes-Barre. Considering the totality of the circumstances, while the stop did occur outside Officer Miller's jurisdiction, Wilkes-Barre officers were on-scene (*see* Doc. 40 at 6 n.3 (citing the Dispatch Report)) and the criminal activity justifying the stop occurred just before in Kingston. *See United States v. Sed*, 601 F.3d 224, 228-29 (3d Cir. 2010) (seizure by Pennsylvania troopers just over the Ohio border reasonable where the defendant "committed a serious drug crime in Pennsylvania and was acting in furtherance of a [drug distribution conspiracy] in Pennsylvania at the time he was seized"); *see also United States v. Ryan*, 729 F. Supp. 2d 479, 490-91 (D. Mass. 2010) (extraterritorial traffic stop and arrest reasonable even though officer "violate[d] the federal statute enumerating his jurisdiction to make warantless arrests"). Green's position—that an extraterritorial stop is *per se* unreasonable—defies *Sed.* 601 F.3d at 228 (explicitly rejecting this "categorical" argument).

In sum, even though officers stopped the car Green was in without a warrant, the stop was reasonable under the Fourth Amendment. Officers had a reasonable suspicion that the car's occupants had just committed crimes, given the reliable information eyewitnesses provided. Green's constitutional rights were therefore not violated, and the evidence seized as a result of his arrest will not be suppressed.

### III. Conclusion

For the above stated reasons, Green's Motion to Suppress will be denied.

An appropriate order follows.

November 27, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge

5